**FILED**

DEC 23 2015

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No.: |
| | ) | **15CR 752** |
| v. | ) | |
| | ) | Violation: 15 U.S.C. § 1 |
| BRANDENBURGER & DAVIS | ) | |
| and | ) | |
| BRADLEY N. DAVIS, | ) | |
| | ) | Filed: |
| Defendants. | ) | |

JUDGE KENNELLY

MAGISTRATE JUDGE BROWN

## INFORMATION

The United States of America charges that:

I.

### DEFENDANTS AND CO-CONSPIRATORS

1. BRANDENBURGER & DAVIS and BRADLEY N. DAVIS, ("defendants") are hereby made defendants on the charge contained in this Information.

2. During the period covered by this Information, BRANDENBURGER & DAVIS was a corporation organized and existing under the laws of California, with its principal place of business in Sacramento, California. During the period covered by this Information, BRANDENBURGER & DAVIS was a provider of Heir Location Services (as defined in Paragraph 6 below) engaged in the sale of Heir Location Services in the United States. During the period covered by this Information, BRADLEY N. DAVIS was the Vice President of defendant BRANDENBURGER & DAVIS, whose job responsibilities included the sale of Heir Location Services in the United States.

1

3. Various co-conspirators not made defendants in this Information, including Company 1 and other individuals, participated in the offense charged in this Information and performed acts and made statements in furtherance thereof.

4. Whenever in this Information reference is made to any act, deed or transaction of any corporation, the allegation means that the corporation engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or other representatives while they were actively engaged in the management, direction, control or transaction of its business or affairs.

II.

BACKGROUND

5. During the period covered by this Information, the defendants and their co-conspirators sold Heir Location Services in the United States, including to customers in the Northern District of Illinois.

6. Providers of Heir Location Services identify heirs to estates of intestate decedents and, in exchange for a contingency fee, develop evidence and prove-up heirs' claims to an inheritance in probate court.

7. Potential heirs who have yet to contract with, and thus become the customer of, an Heir Location Services provider may receive offers from one or more such providers. Providers may distinguish their offers from those of competitors by offering more attractive contingency fee rates. Depending on the jurisdiction of the estate, the complexity of the estate, and the determinability and number of heirs to the estate, heirs may not receive their final distribution from an estate for five or more years.

III.

## DESCRIPTION OF THE OFFENSE

8. Beginning at least as early as November 2003 and continuing until at least August 2012, the exact dates being unknown to the United States, in the Northern District of Illinois and elsewhere, the defendants entered into and engaged in a combination and conspiracy with Company 1 and other individuals to suppress and eliminate competition by agreeing to allocate customers of Heir Location Services sold in the United States. The combination and conspiracy engaged in by the defendants and their co-conspirators was in unreasonable restraint of interstate trade and commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

9. The charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among the defendants and their co-conspirators, the substantial terms of which were to allocate customers of Heir Location Services sold in the United States.

IV.

## MEANS AND METHODS OF THE CONSPIRACY

10. For the purpose of forming and carrying out the charged combination and conspiracy, the defendants and co-conspirators did those things that they combined and conspired to do, including, among other things:

    (a) participating in conversations and other communications to discuss methods for allocating heirs of estates in the United States;

    (b) agreeing, during those conversations and other communications, to allocate to the co-conspirator company that first made an initial contact

3

with any heir to an estate, those heirs to the estate who had yet to sign a contract with an heir location services provider;

(c) exchanging estate-related information to notify co-conspirators that an initial contact had been made with an heir to the estate, in order to effectuate the agreement;

(d) agreeing on an estate-by-estate basis that the co-conspirator company to which heirs were allocated would pay to the other co-conspirator company a portion of the contingency fees collected from those allocated heirs;

(e) making payments to the co-conspirator company, and receiving payments from the co-conspirator company, in order to effectuate the agreement;

(f) submitting offers to provide Heir Location Services, which include contingency fee rate quotations, to potential heirs, and refraining from submitting offers and quotations to potential heirs, in accordance with the agreement;

(g) selling Heir Location Services in the United States at collusive and noncompetitive contingency fee rates;

(h) accepting payment for Heir Location Services sold to heirs in the United States at collusive and noncompetitive contingency fee rates; and

(i) engaging in conversations and other communications for the purpose of monitoring and enforcing adherence to the conspiracy.

## V.

## TRADE AND COMMERCE

11. During the period covered by this Information, the corporate conspirators sold Heir Location Services to heirs in the United States in a continuous and uninterrupted flow of interstate trade and commerce. In addition, records and documents necessary for the sale and provision of such services by the corporate conspirators, as well as payments and solicitations for those services, traveled in interstate commerce.

12. During the period covered by this Information, the business activities of the corporate conspirators in connection with the sale and provision of Heir Location Services that are the subject of this Information were within the flow of, and substantially affected, interstate commerce.

ALL IN VIOLATION OF TITLE 15, UNITED STATES CODE, SECTION 1.

_____
WILLIAM J. BAER
Assistant Attorney General

_____
BRENT SNYDER
Deputy Assistant Attorney General

_____
MARVIN N. PRICE, JR.
Director of Criminal Enforcement
Antitrust Division
U.S. Department of Justice

_____
FRANK J. VONDRAK
Chief, Chicago Office

_____
ROBERT M. JACOBS, IL Bar No. 6289819
RUBEN MARTINEZ, JR., TX Bar No. 24052278
MOLLY A. KELLEY, IL Bar No. 6303678
Trial Attorneys
U.S. Department of Justice
Antitrust Division
Chicago Office
209 S. LaSalle Street, Suite 600
Chicago, IL 60604
Tel.: (312) 984-7200

6